UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MACHELLE H., | |
|                Petitioner, | Case No. 1:20-CV-00357-CWD |
| v. | **MEMORANDUM DECISION AND ORDER** |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security Administration,[1] | |
|            Respondent. | |

**INTRODUCTION**

Before the Court is Machelle H.'s Petition for Review of the final decision of the Commissioner of Social Security denying her application for a period of disability and disability insurance benefits filed July 20, 2020. (Dkt. 1.) The Court has reviewed the Petition, the Answer, the parties' memoranda, and the administrative record (AR). For the reasons that follow, the Court will grant the Petition and remand the ALJ's decision for further proceedings.

---

[1] Kilolo Kijakazi is substituted for Andrew Saul pursuant to Federal Rule of Civil Procedure 25(d). Kijakazi became the Acting Commissioner of Social Security Administration on July 9, 2021.

**MEMORANDUM DECISION AND ORDER - 1**

## BACKGROUND

On September 27, 2017, Petitioner filed a Title II application for a period of disability and disability insurance benefits alleging disability beginning on August 17, 2017. At the time of the alleged onset date, Petitioner was 51 years of age. Petitioner meets the insured status requirements through December 31, 2022.

Petitioner holds an associate degree as a legal secretary and has prior work experience as a deputy city clerk and administrative assistant. Petitioner claims she is unable to work due to pain in her lower back (lumbar stenosis), legs, and buttocks; pain in her left shoulder and neck; winged scapular; and breast cancer stage III in 2013 (in remission). The application was denied initially and on reconsideration.

A hearing was conducted on June 5, 2019, before Administrative Law Judge (ALJ) Christopher R. Inama. After hearing testimony from Petitioner and a vocational expert, the ALJ issued a decision finding Petitioner not disabled on July 24, 2019. (AR 20-29.) The Appeals Council denied Petitioner's request for review, making the ALJ's decision final. *See* 42 U.S.C. § 405(h). Petitioner timely filed this action seeking judicial review of the ALJ's decision. (Dkt. 1.) The Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

## ISSUES PRESENTED

1)    Whether the ALJ erred at step three.

2)    Whether the ALJ failed to properly consider the medical opinion evidence.

3)    Whether the AJL erred in evaluating Petitioner's symptom statements.

4)    Whether the ALJ's RFC assessment is supported by substantial evidence.

## STANDARD OF REVIEW

The Court must uphold an ALJ's decision unless: 1) the decision is based on legal error, or 2) the decision is not supported by substantial evidence. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla, but less than a preponderance of evidence. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

In making its determination, the Court considers the administrative record as a whole, weighing both the evidence that supports and the evidence that does not support the ALJ's conclusion. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). The Court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court considers only the reasoning and actual findings identified by the ALJ and may not affirm for a different reason or based on post hoc rationalizations attempting to infer what the ALJ may have concluded. *Garrison*, 759 F.3d at 1010; *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009).

If the ALJ's decision is based on a rational interpretation of conflicting evidence, the Court will uphold the ALJ's finding. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008). The Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

**MEMORANDUM DECISION AND ORDER - 3**

## THE ALJ'S FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

Here, at step one, the ALJ found Petitioner had not engaged in substantial gainful activity since August 17, 2017, the alleged onset date. (AR 20.) At step two, the ALJ determined Petitioner had the following severe impairments: degenerative disc disease of the lumbar spine, and a winged left scapula. (AR 22.) The ALJ recognized other mental impairments in the record – depressive disorder and anxiety disorder - but concluded the conditions were nonsevere. (AR 16.)

At step three, the ALJ found Petitioner did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (AR 24.) The ALJ next assessed Petitioner's residual functional capacity ("RFC") and determined she could perform light work as defined in 20 C.F.R. § 404.1567(b), with some postural limitations. (AR 24.) At step four, the ALJ found Petitioner capable of performing her past relevant work and, therefore, concluded Petitioner was not disabled. (AR 28-29.)

**MEMORANDUM DECISION AND ORDER - 4**

# DISCUSSION

## 1.    The ALJ's Step Three Analysis

### A.    Legal Standard

At step three of the sequential evaluation process, the ALJ must determine whether one or more of the claimant's impairments meets or equals an impairment listed in Appendix 1 to Subpart P of the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). "To meet a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim. To equal a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment ...." *Tackett*, 180 F.3d at 1099 (quoting 20 C.F.R. § 404.1526)); *see also* 20 C.F.R. § 404.1525(c). If a claimant meets or equals all of the requirements of a listing, the claimant is considered disabled without further inquiry. 20 C.F.R. § 404.1520(a)(4)(iii).

The claimant bears the burden of establishing a prima facie case of disability under the Listings. *See Tackett*, 180 F.3d at 1098-99. "A generalized assertion of functional problems," however, "is not enough to establish disability at step three." *Id*. at 1100 (citing 20 C.F.R. § 404.1526)). Further, "[t]he mere diagnosis of an impairment listed in 20 C.F.R. Appendix 1, Subpart P ... is not sufficient to sustain a finding of disability." *Young v. Sullivan*, 911 F.2d 180, 183 (9th Cir. 1990); 20 C.F.R. § 404.1525(d). Rather, a mental or physical impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1521. It must

be established by medical evidence "consisting of signs, symptoms, and laboratory findings." *Id.*

### B.    Discussion

Petitioner argues the ALJ erred at step three by finding Petitioner did not meet or equal Listing 1.04 Disorders of the Spine. (Dkt. 17.)

Under Listing1.04, Petitioner must first show she has a disorder of the spine "resulting in compromise of a nerve root ... or the spinal cord." 20 C.F.R. Part 404, Subpart P, App. 1, § 1.04. If she satisfies this threshold requirement, Petitioner can meet the Listing by satisfying the requirements in subsection 1.04A, 1.04B, or 1.04C.[2] Here, Petitioner contends she met or equaled Listing 1.04C.

Listing 1.04C requires Petitioner to establish "[l]umbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in the inability to ambulate effectively, as defined in [Listing] 1.00B2b." 20 C.F.R. Part 404, Subpart P,

---

[2] Listing 1.04 provides:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight–leg raising test (sitting and supine); or
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04.

App. 1, § 1.04C. Under Listing 1.00B2b(1), an inability to ambulate effectively means:

> [A]n extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning...to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

*Id*. at § 1.00B2b(1). The regulations further state:

> To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

*Id.* at § 1.00B2b(2).

Here, the ALJ found at step three that Petitioner does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments, stating:

> I considered all listed impairments in 20 CFR Part 404, Subpart P, Appendix 1, with specific attention to listings 1.04 and 1.02. The objective medical evidence fails to illustrate a compromise of a nerve root or the spinal cord with corresponding losses in motor strength, sensation, and reflexes, and the record lacks positive straight leg testing, both sitting and supine. In addition, the record lacks objective medical evidence of gross anatomical deformity…involving one major peripheral joint in each upper extremity. Therefore, I conclude, the medical evidence does not demonstrate that the claimant's impairments rose to listing level severity and that no acceptable medical source had mentioned findings equivalent in

**MEMORANDUM DECISION AND ORDER - 7**

severity to the criteria of any listed impairment, individually or in
combination.

(AR 24) (internal citations to the record omitted).

Petitioner contends the ALJ erred by failing to evaluate her degenerative disc
disease under Listing 1.04C. (Dkt. 13 at 8.) Petitioner points out that the ALJ's decision
cites medical records in conjunction with discussing the requirements of Paragraph A of
Listing 1.04, but gives no consideration to Paragraph C's requirements and provides no
analysis regarding Petitioner's ability to ambulate effectively. (Dkt. 17 at 3.) Further,
Petitioner argues the evidence establishes she medically equals Listing 1.04C, because
she is unable to ambulate, e.g., walk, effectively.

Respondent maintains substantial evidence supports the ALJ's step three
determination and that Petitioner's impairments do not meet or equal the criteria under
Listing 1.04C. (Dkt. 14 at 3-5.) Specifically, Respondent contends that the evidence does
not show Petitioner is unable to ambulate effectively.

At step three, the ALJ discussed the characteristics specific to Listing 1.04A –
motor strength, sensation, reflexes, and positive straight leg raises. (AR 24.) Although the
ALJ did not discuss the medical evidence and other records in detail at step three, he did
provide an evaluation of the medical records and Petitioner's symptom statements
between steps three and four. (AR 25-28.) Relevant here, the ALJ considered the records
relied on by Petitioner relating to her ability to ambulate. (AR 25-27) (comparing
Petitioner's statements that she occasionally went for walks around the subdivision and
records of physical examination findings that Petitioner has normal movement of all

extremities, normal gait, and her pain was well controlled with conservative treatment). Thus, the ALJ did not harmfully err by discussing the evidence that supports his conclusion at step three in later sections of the written decision. *Lewis*, 236 F.3d at 513 (holding the ALJ's discussion and evaluation of evidence sufficient even if contained under another section of the decision); *Gonzalez*, 914 F.2d at 1200-01 (ALJ is not required to state why a claimant fails to satisfy every criteria of the Listing if the ALJ adequately summarizes and evaluates the evidence.).

Turning to Petitioner's substantive challenge, arguing the evidence in the record establishes medical equivalence to Listing 1.04C based on her inability to ambulate, the Court finds the ALJ did not err at step three. Petitioner bears the burden to show she meets or medically equals Listing 1.04C. *Tackett*, 180 F.3d at 1098. She has not met her burden here.

Here, Petitioner relies primarily on her own symptom statements to show her inability to ambulate. (Dkt. 13, 17) (citing AR 52-54, 837.) Petitioner maintains subjective symptoms are relevant and should be considered when assessing her claim under Listing 1.04C. (Dkt. 17 at 3-4.) Respondent disagrees, arguing Petitioner must point to objective evidence showing she equaled the listing, not just her own subjective statements. (Dkt. 14 at 5.)

In order to show error at step three, Petitioner must identify which listing she believes she meets or equals, and then set forth "evidence which would support the diagnosis and findings of a listed impairment." *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). To prove medial equivalency, Petitioner must point to evidence showing her

symptoms, signs, and laboratory findings are medically equal to the listed impairment. 20 C.F.R. § 404.1529(d)(3). However, the regulations also state that: "[the Commissioner] will not substitute your allegations of pain or other symptoms for a missing or deficient sign or laboratory finding to raise the severity of your impairment(s) to that of a listed impairment." *Id.* Thus, while symptom evidence may be considered, the regulations require Petitioner to identify some objective medical evidence to support her claim of equivalency. Petitioner has failed to do so here by citing principally to her own subjective symptom statements.

Petitioner does cite to one medical record - a whole body assessment performed by Todd Horton, PTA. (Dkt. 13 at 8) (citing AR 725-30.) However, the ALJ found Mr. Horton's assessment unpersuasive. (AR 27.) Petitioner does not contest the ALJ's evaluation discrediting Mr. Horton's report. Further, Mr. Horton's assessment does not provide objective medical evidence establishing that Petitioner meets or equals listing 1.04C. (AR 979-980) (finding some limitations with stairs but that Petitioner had no pain with her gait, and was able to maintain balance and with no pain with toe walk, heel walk, and heel-toe walk.) Accordingly, Mr. Horton's assessment does not support Petitioner's claim that she meets or medically equals a listing at step three. Indeed, unlike the records concerning Petitioner's limitations with sitting and standing, the medical records are noticeably lacking in evidence showing Petitioner is unable to walk or ambulate.

For these reasons, the Court finds Petitioner has not shown the ALJ erred in his step three determination. However, because Petitioner's claim will be remanded on other

bases, the ALJ should reconsider the entire record in formulating a new decision.

**2.      The Medical Opinion Evidence**

Petitioner argues the ALJ erred in evaluating the medical opinions. (Dkt. 13, 17.) Specifically, Petitioner contends that the ALJ improperly rejected the opinion of Petitioner's treating provider, Dr. Sandra A. Thompson, and ignored the independent medical evaluation of Dr. James H. Bates. Respondent disagrees, asserting the ALJ properly considered the medical opinion evidence. (Dkt. 14.)

**A.      Legal Standard**

The Commissioner revised the regulations applicable to the evaluation of medical evidence for disability applications filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017). The new regulations changed how the Commissioner evaluates medical opinions and prior administrative medical findings by eliminating the use of the term "treating source" as well as what is customarily known as the treating source or treating physician rule. *See* 20 C.F.R. § 404.1520c(a). Instead, the regulations now provide that the Commissioner "will not defer or give any specific evidentiary weight ... to any medical opinion(s) ... including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a).

Under the revised regulations, the ALJ must now consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources according to the following factors: supportability; consistency; relationship with the claimant (including length of the treatment, frequency of

examinations, purpose of the treatment, extent of the treatment, and the existence of an examinations); specialization; and other factors such as the medical source's familiarity with other evidence in the record or with disability program requirements. 20 C.F.R. § 404.1520c(c)(1)-(5). The ALJ's duty to articulate a rational for each factor varies. 20 C.F.R. § 404.1520c(a)-(b).

Supportability and consistency are the most important factors and, therefore, the ALJ must explain how both factors were considered. 20 C.F.R. § 404.1520c(b)(2). The supportability factor looks inward at the medical opinion's bases; "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)…, the more persuasive the medical opinions…will be." 20 C.F.R. § 404.1520c(c)(1). The consistency factor, on the other hand, looks outward, comparing the opinion to the other evidence in the record; "[t]he more consistent a medical opinion(s)…is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s)…will be." 20 C.F.R. § 404.1520c(c)(2).

The ALJ need only address the remining factors - treatment relationship, specialization, and any other factors - when deciding among differing yet equally persuasive opinions or findings on the same issue. 20 C.F.R. § 404.1520c(b)(2)-(3) (Where "two or more medical opinions…about the same issue are both equally well-supported…and consistent with the record…but are not exactly the same."). The ALJ may address multiple opinions from a single medical source in one analysis. 20 C.F.R. § 404.1520c(b)(1) ("voluminous case records" necessitate source-level articulation).

Because Petitioner's applications were filed after March 27, 2017, the applications are subject to the revised regulations. *See Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Services*, 545 U.S. 967, 981-82 (2005); *see e.g., Schisler v. Sullivan*, 3 F.3d 563, 567-58 (2d Cir. 1993) ("New regulations at variance with prior judicial precedents are upheld unless 'they exceeded the Secretary's authority [or] are arbitrary and capricious.'"). Accordingly, the Court will apply the revised regulations here.[3]

Under the revised regulations, the ALJ is required to "articulate ... how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." 20 C.F.R. § 404.1520c(b). "The 'more relevant the objective medical evidence and supporting explanations presented' and the 'more consistent' with evidence from other sources, the more persuasive a medical opinion or prior finding." *Carmen Claudia S. v. Saul*, 2021 WL 2920614, at *8 (C.D. Cal. July 9, 2021) (quoting *Robert S. v. Saul*, 2021 WL 1214518, at *3 (D. Or. Mar. 3, 2021)). "In sum, the Commissioner must explain his reasoning and specifically address how he considered the supportability and consistency of the opinion, and his reasoning must be free from legal error and supported by substantial evidence." *Id.* (quoting *Titus L. S. v. Saul*, 2021 WL 275927, at *7 (C.D. Cal. Jan. 26, 2021); *see also Zhu v. Comm'r of Social Sec. Admin.*, No. 20-3180, 2021 WL 2794533, at *6 (10th Cir. July 6, 2021) (applying

---

[3] Respondent contends the revised regulations "differ substantially" from prior regulations. (Dkt. 14 at 8.) Petitioner disagrees, arguing the revised regulations still require the ALJ to explain his or her evaluation of medical opinion evidence. (Dkt. 17 at 4.) The Ninth Circuit has not addressed whether or how the revised regulations alter the Court's review of the adequacy of the ALJ's consideration of medical opinion evidence. *See Andrew S. v. Comm'r of Soc. Sec.*, 2021 WL 3260354, at *2 (W.D. Wash. July 30, 2021). The Court will apply the revised regulations as discussed herein.

the substantial evidence standard under the 2017 regulations). With these regulations and

considerations in mind, the Court proceeds to its analysis of the medical evidence in this

case.

> **B.      Sandra A. Thompson, M.D.**

On November 2, 2017, Dr. Thompson completed a physician's report in

conjunction with Petitioner's application for disability retirement filed with the Public

Employee Retirement System of Idaho (PERSI), concluding Petitioner is unable to work.

(AR 865-873.) Dr. Thompson found that Petitioner's lumbar stenosis and resulting lower

back pain and leg pain, renders her unable to sit or stand for any more than short time

periods and requires her to change positions constantly. (AR 866.) Dr. Thompson

recorded her assessment of Petitioner's functional capacity on a checkbox form, finding

Petitioner was limited to lifting, carrying, and pushing ten pounds occasionally, walking

and climbing occasionally. (AR 872.)

> The ALJ found Dr. Thompson's opinion unpersuasive, stating:

> In November 2017, the claimant's pain management provider, Dr. Thompson
> completed a disability form, in which she reported that the claimant was
> limited to the following: occasionally lift, carry, push, and pull 10 pounds;
> and occasionally walk and climb (Exh. 16F/68). Dr. Thompson provided no
> explanation in support of her opinion. The conservative treatment records,
> the repeated statements of improvement, the significant number of normal or
> only mildly abnormal clinical observations, and the objective imaging results
> are not consistent with the unexplained opinion. Accordingly, I find that this
> opinion is unpersuasive.

(AR 27.)

The Court finds the ALJ erred in his consideration of the supportability of Dr.

Thompson's opinion. Specifically, the ALJ's conclusion that Dr. Thompson provided "no

explanation in support of her opinion," is in error. (AR 27.)

As stated previously, the revised regulations expressly require ALJs to explain how they considered the supportability factor in addressing the persuasiveness of a medical opinion. *See* 20 C.F.R. § 404.1520c(b)(2). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). Even under the revised regulations, "it remains the case that 'an ALJ errs when he [or she] rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion.'" *Sylvester G. v. Saul*, 2021 WL 2435816, at *5 (C.D. Cal. June 15, 2021) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014)).

Here, the ALJ referenced only one page of Dr. Thompson's report - the checkbox portion of the form. (AR 27) (citing 16F/68, or AR 872.) The ALJ then simply concluded, without any discussion, that Dr. Thompson "provided no explanation in support of her opinion." (AR 27.) However, the ALJ neglected to address Dr. Thompson's relevant comments and findings contained in the other six pages of her Physician's Report. (AR 865-873.) In doing so, the ALJ erred by failing to consider all of Dr. Thompson's report, and by failing to discuss the supportability factor in the written decision.

When viewed in its entirety, Dr. Thompson's report includes narrative comments relevant to the supportability of her findings noted on the checkbox portion of the form. For instance, Dr. Thompson lists the MRI showing lumbar stenosis as an objective finding supporting her diagnosis and treatment; describes Petitioner's medications and treatment; and states a prognosis. (AR 866-867.) Notably, Dr. Thompson opines that Petitioner is "unable to sit or stand for any more than short periods and has to change positions constantly, due to pain." (AR 866.)

These comments, while brief, provide the bases for Dr. Thompson's conclusions reflected in the checkbox portion of the form. It was therefore error for the ALJ to summarily conclude that Dr. Thompson's opinion was unexplained and therefore unsupported, without acknowledging or discussing Dr. Thompson's comments made elsewhere in the Physician's Report. The Court considered the possibility that the ALJ reviewed the entirety of Dr. Thompson's report. However, the written decision simply provides no indication that the ALJ did so. Accordingly, the Court is unable to confidently conclude that the ALJ's discussion of the supportability factor as it relates to Dr. Thompson's opinion was harmless.

An ALJ's failure to properly evaluate a physician's opinion may be harmless error when a reviewing court "can confidently conclude that no reasonable ALJ, when fully crediting the [opinion], could have reached a different disability determination." *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (quoting *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-1056 (9th Cir. 2006)). Had the ALJ credited some or all of Dr. Thompson's opinion, it could have affected the RFC assessment, the hypothetical posed

to the vocational expert, and the disability determination. *Id*. For this reason, the ALJ's error was not harmless.

In so finding, the Court makes no determination concerning the supportability or overall persuasiveness of Dr. Thompson's opinion. Rather, the Court finds only that the ALJ erred by failing to properly consider Dr. Thompson's report in its entirety and to articulate how he considered the supportability factor. *See e.g., Robert S. v. Saul*, 2021 WL 1214518, at *3 (D. Or. Mar. 3, 2021) ("The new regulations require ALJs to 'articulate…how persuasive [they] find all of the medical opinions' and 'explain how [they] considered the supportability and consistency factors.'") (quoting 20 C.F.R. 404.1520c(b)). These determinations are to be made by the ALJ in the first instance. *Brown-Hunter v. Colvin*, 806 F.3d 487, 496 (9th Cir. 2015). Accordingly, remand is warranted.

### C.    James H. Bates, M.D.

In 2019, Petitioner underwent an independent medical evaluation with Dr. Bates in relation to her application for disability retirement filed with PERSI. (AR 845-857.) Dr. Bates reviewed Petitioner's medical records and conducted a physical examination to evaluate Petitioner's spinal stenosis, chronic low back pain, and winged scapula. Dr. Bates concluded Petitioner is disabled under PERSI's definition of disability, finding Petitioner cannot reasonably engage in any occupation or employment in a standard work environment. (AR 856.)

In his decision, the ALJ did not discuss Dr. Bates' evaluation, but did state:

I did not provide articulation about the evidence that is inherently neither

valuable nor persuasive in accordance with 20 [C.F.R.] § 404.1520b(c).
This includes a number of conflicting statements from providers
and examiners on the issues of whether the claimant is disabled or not,
whether the claimant is able to work or not, and whether the claimant is
able to return to her past work.

(AR 28.)

Petitioner argues the ALJ erred by failing to discuss Dr. Bates' evaluation,

pointing to the regulations indicating "we will consider all of the supporting evidence

underlying the other governmental agency or nongovernmental entity's decision that we

receive as evidence in your claim in accordance with [20 C.F.R.] § 404.1513(a)(1)

through (4)." (Dkt. 17 at 8.) Specifically, Petitioner argues the ALJ is required to consider

"other medical evidence," which includes clinical findings and medical history. *See* 20

C.F.R. § 404.1513(a)(3) (discussing "other medical evidence").

Petitioner asserts the ALJ ignored Dr. Bates' physical examination finding that she

would be unable to perform four hours of continuous, non-accommodated work and

would need to change positions frequently. (Dkt. 13 at 14-15.) This was harmful error,

Petitioner contends, because these limitations were not included in the ALJ's RFC

assessment or any hypothetical to the vocational expert. (Dkt. 17 at 8.)

Respondent maintains that the revised regulations do not require the ALJ to offer

any analysis on statements regarding issues reserved to the Commissioner, such as Dr.

Bates' conclusions regarding Petitioner's ability to work. (Dkt. 14 at 14) (citing 20 C.F.R.

§ 404.1520b(c)). However, Respondent concedes that the ALJ arguably erred by failing

to discuss one portion of Dr. Bates' evaluation finding that Petitioner required the ability

to change positions frequently from sit and stand. Respondent argues any error was

harmless, because the RFC included a limitation that work be performed while in a sitting or standing position.

The revised regulations provide that statements on issues reserved to the Commissioner, such as whether an individual is able to work or is disabled, are neither valuable nor persuasive and the ALJ is not required to provide an analysis of how such evidence is considered. 20 C.F.R. § 404.1520b(c). The ALJ is required to provide an analysis of medical opinions only in accordance with 20 C.F.R. § 404.1520c. Medical opinions are statements from medical sources about what a claimant can still do despite their impairments, and whether they have impairment-related limitations or restrictions on their ability to perform physical, mental, and other demands of work activities. 20 C.F.R. § 404.1513(a)(2).

Here, Dr. Bates' conclusions concerning whether Petitioner is disabled under PERSI does not assess any specific work-related function and, thus, do not constitute a "medical opinion" under 20 C.F.R. § 404.1513(a)(2). The ALJ was therefore not required to articulate how persuasive he considered the evidence to be, or to otherwise address Dr. Bates' disability determination in the written decision. 20 C.F.R. § 404.1520b(c)(3)(i).

However, the ALJ erred by failing to address Dr. Bates' finding that Petitioner needs "to change positions frequently from sit and stand and [has] prominent limitations in her general mobility and transitions." (AR 856.)[4] This finding by Dr. Bates is a

---

[4] Petitioner also assigns error to the ALJ's failure to address Dr. Bates' conclusion that she is unable to perform four hours of continuous, non-accommodated work. (Dkt. 17 at 8.) However, Dr. Bates' conclusion that Petitioner is unable to perform any form of employment, either full time or part time, was made in response to a specific question regarding Petitioner's ability to work for purposes of her PERSI disability application. It is not a medical opinion or other medical evidence that the ALJ was required to

medical opinion about Petitioner's ability to perform the physical demands of work activities that the ALJ was required to address. 20 C.F.R. § 404.1513(a)(2). The ALJ's failure to discuss Dr. Bates' medical opinion in this regard was error. Although the RFC assessment limits Petitioner to work that can be done from a sitting or standing position, the Court cannot confidently conclude that no reasonable ALJ would have reached a different disability determination when fully crediting Dr. Bates' opinion.[5]

"ALJ errors in social security are harmless if they are 'inconsequential to the ultimate nondisability determination' and that 'a reviewing court cannot consider [an] error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.'" *Marsh*, 792 F.3d at 1173 (quoting *Stout*, 454 F.3d at 1055-1056). Had the ALJ credited some or all of Dr. Bates' medical opinion relevant to Petitioner's ability to sit and stand, it could have affected the RFC assessment, the hypotheticals posed to the vocational expert, and the disability determination.[6] For this reason, the Court finds that the ALJ's error was not

---

consider because it relates to the disability determination under PERSI. 20 C.F.R. § 404.1520b(c)(3)(i).

[5] Dr. Thompson completed three physician's statement forms in September, October, and November of 2017. (AR 700-702.) In all three forms, Dr. Thompson opined that Petitioner is unable to work. However, in the October 2017 form, Dr. Thompson found Petitioner was "unable to sit or stand for greater than thirty minutes." (AR 701.) The ALJ did not discuss any of Dr. Thompson's physician's statements, concluding they were inherently neither valuable nor persuasive in accordance with 20 C.F.R. § 404.1520b(c). (AR 28.) As with Dr. Bates' opinion, the Court finds the ALJ correctly concluded that Dr. Thompson's opinions regarding Petitioner's ability to work were neither valuable nor persuasive. (AR 28, 701.) However, the ALJ erred in failing to address Dr. Thompson's finding that Petitioner is unable to sit or stand for greater than thirty minutes. (AR 28, 701.) The ALJ should reevaluate this evidence on remand.

[6] This is not to say that the disability determination will or should be different in this case, only that the Court cannot determine that the outcome would remain the same in the absence of any discussion by the ALJ of the relevant medical evidence.

harmless. *Id.* (The disability decision rests with the ALJ the first instance, not with the district court.).

## CONCLUSION

The Court will not address the remaining issues raised by Petitioner. As explained above, the ALJ erred in his assessment of certain medical opinions. The ALJ's evaluation of Petitioner's symptom statements, RFC assessment, and the disability determination are each necessarily tethered to the medical record. Thus, Petitioner's additional contentions of error must be addressed by the ALJ in the first instance when evaluating the evidence on remand, which the court finds is warranted here.

The decision of whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000). "The district court must first determine that the ALJ made a legal error, such as failing to provide legally sufficient reasons for rejecting evidence.... If the court finds such an error, it must next review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and all essential factual issues have been resolved." *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) (citation and internal quotation marks omitted).

When no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Harman*, 211 F.3d at 1179 ("the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"). But when there are outstanding issues that must be resolved before a

determination of disability can be made, and it is not clear from the record the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand without an award of benefits is appropriate. *Id*. A remand for an immediate award of benefits is appropriate "only in rare circumstances." *Brown-Hunter*, 806 F.3d at 495.

The Court finds remand for further proceedings is appropriate here because the circumstances of this case do not preclude the potential that further administrative review will remedy the ALJ's errors. On remand, the Commissioner must properly consider the medical opinion evidence, which in turn may lead to the formulation of a new RFC and the need for additional vocational expert testimony. The Court therefore declines to exercise its discretion to remand for an immediate award of benefits. *See INS v. Ventura*, 537 U.S. 12, 16 (2002); *Dominguez*, 808 F.3d at 407 ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits.").

Although the Court has found error as discussed above, the record on the whole is not fully developed, and factual issues remain outstanding. The issues concerning Petitioner's alleged disability "should be resolved through further proceedings on an open record before a proper disability determination can be made by the ALJ in the first instance." *See Brown-Hunter*, 806 F.3d at 496; *Treichler*, 775 F.3d at 1101 (remand for award of benefits is inappropriate where "there is conflicting evidence, and not all essential factual issues have been resolved") (citation omitted); *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011) (same where the record does not clearly demonstrate the claimant is disabled within the meaning of the Social Security

Act). Accordingly, the Court will remand the claim for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1)      Petitioner's Petition for Review (Dkt. 1) is **GRANTED**.

2)      This action shall be **REMANDED** to the Commissioner for further proceedings consistent with this opinion.

3)      This Remand shall be considered a "sentence four remand," consistent with 42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).

DATED: September 22, 2021

Honorable Candy W. Dale
Chief United States Magistrate Judge